# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

IN RE THE HOME DEPOT, INC.
SHAREHOLDER DERIVATIVE
LITIGATION

This Document Relates To:

:
:
:
:
:
:
:
:
:
:
x

Civil Action No. 1:15-CV-2999-TWT

## PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT AND AWARD OF ATTORNEY'S FEES AND REIMBURSEMENT OF EXPENSES WITH MEMORANDUM OF LAW IN SUPPORT

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................1

II.   SUMMARY OF FACTUAL AND PROCEDURAL BACKGROUND .........3

    A.   Background to the Litigation ..................................................3

    B.   The Consolidated Action .......................................................3

    C.   The Litigation Demand ...........................................................4

    D.   Settlement................................................................................5

III.  TERMS AND BENEFITS OF THE SETTLEMENT ...................................6

IV.  THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE FINALLY APPROVED BY THE COURT ...................7

    A.   The Likelihood of Success at Trial ........................................9

    B.   The Range of Reasonableness ..............................................11

    C.   Complexity, Expense, Risk and Duration of Further Litigation Support Approval of the Settlement ......................................13

    D.   The Reaction of Current Home Depot Shareholders Also Supports Approval of the Settlement ....................................15

    E.   The Stage of the Proceedings Supports Approval of the Settlement.....16

    F.   The Settlement is the Result of Good Faith, Arm's-Length Negotiations Between Experienced and Capable Counsel...................18

V.    THE AGREED-TO FEE AWARD IS FAIR AND REASONABLE AND SHOULD BE FINALLY APPROVED ...............................................19

    A.   The Court Should Approve the Negotiated Fee………………………20

    B.   The Fee and Expense Award is Supported by the *Johnson* Factors…..20

        1.   The Time and Labor Required and the Novelty and Difficulty of the Questions Involved…………………………………..21

        2.   The Amount Involved and the Results Obtained ........................22

        3.   The Skill, Experience, and Reputation of Counsel ....................23

        4.   The Contingent Nature of the Fee .............................................24

        5.   Awards in Similar Cases ...........................................................24

VI.  THE SERVICE AWARD SHOULD BE APPROVED .................................25

VII. CONCLUSION................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1311 (3d Cir. 1993) ...................................12

*Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) ...... 7, 8, 9, 11, 13, 16

*Boeing Co v. Van Gemert*, 444 U.S. 472 (1980) ......................................19

*Citron v. Burns*, C.A. No. 7647, 1985 Del. Ch. LEXIS 382, *6 (Del. Ch. Feb. 4, 1985)...........................................................................12

*Cohn v. Nelson*, 375 F. Supp. 2d 844, 853 (E.D. Mo. 2005)........................... 12, 13

*Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) ............................. 8, 16, 18

*Fla. Trailer & Equip. Co. v. Deal*, 284 F.2d 567, 573 (5th Cir. 1960) ...................10

*Francisco v. Numismatic Guar. Corp.*, No. 06-61677, 2008 WL 649124, at *11 (S.D. Fla., Jan. 31, 2008)..................................................... 16, 26

*Garst v. Franklin Life Ins. Co.*, No. 97-C-0074, 1999 U.S. Dist. LEXIS 22666, at *64 (N.D. Ala. June 25, 1999)...........................................................11

*Gregg v. U.S. Indus., Inc.*, 887 F.2d 1462, 1477 (11th Cir. 1989) .........................14

*Grimes v. Donald*, 673 A. 2d 1207 (Del. 1993).......................................................11

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ............................................................19

*In re AOL Time Warner Shareholder Derivative Litig.*, 2010 WL 363113, at *15 (S.D.N.Y. Feb. 1, 2010).................................................................22

*In re Catfish Antitrust Litig.*, 939 F. Supp. 493, 502 (N.D. Miss. 1996)................21

*In re Cendant Corp. Derivative Action Litig.*, 232 F. Supp. 2d 327, 333-34 (D.N.J. 2002) ............................................................................... 15, 25

*In re Chicken Antitrust Litig.*, 560 F. Supp. 957, 960 (N.D. Ga. 1980) ...................8

*In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 212 (5th Cir. 1981)...11, 13, 16

*In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D.  297, 313 (N.D. Ga. 1993) ...............................................................................................18

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995) ........................................................................................18

*In re Infinity Broadcasting Corp.*, 802 A.2d 285 (Del. 2002) ......................... 13, 21

*In re Motorsports Merch. Antitrust Litig.*, 112 F. Supp. 2d 1329, 1333 (N.D. Ga. 2000) ............................................................................... 7, 15

*In re NVIDIA Corp. Derivative Litig.*, C 06-06110-SBA (JCS), 2008 WL 5382544, at *3 (N.D. Cal. Dec. 22, 2008) ............................................23

*In re Pac. Enters. Sec. Lit.,* 47 F.3d 373, 378 (9th Cir. 1995) .................................10

*In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d. 1323, 1335 (S.D. Fla. 2001) ..............24

*Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 695 (N.D. Ga. 2001)...........................20

*Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1340 (11th Cir. 1999) .........14

*Johnson v. Georgia Highway Exp. Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974) *abrogated on other grounds Blanchard v. Bergeron*, 109 S. Ct. 939 (1989) .....20, 21, 23

*Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984)....................7

*Lewis v. Newman,* 59 F.R.D. 525, 528 (S.D.N.Y. 1973)...........................................9

*Lucas v. Kmart Corp.,* 234 F.R.D. 688, 693 (D. Colo. 2006) ...................................9

*Maher v. Zapata Corp.*, 714 F. 2d 436, 455 (5th Cir. 1983) .............. 7, 9, 11, 21, 22

*Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 395, 396-97 (1970)……………..22

*Milstein v. Werner*, 58 F.R.D. 544, 549 (S.D.N.Y. 1973) .......................................24

*Polk v. Good*, 507 A.2d 531, 536 (Del. 1986) .................................................... 9, 13

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424 (1968) ...................................................................13

*Ressler v. Jaconson*, 822 F. Supp. 1551, 1556 (M.D. Fla. 1992) ...........................15

*United Nat'l Ret. Fund v. Watts*, No. 04-3603, 2005 U.S. Dist. LEXIS 26246, at *18 (D.N.J. Oct. 28, 2005) ...............................................................................12

*Williams v. First Nat'l Bank,* 216 U.S. 582, 595 (1910).........................................7

*Zimmerman v. Bell*, 800 F.2d 386, 392 (4th Cir. 1986)...........................................8

## Other Authorities

7 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* §22.110, at 476 (4th ed. 2002)..................................................................................... 8, 18

*Court Awarded Attorney's Fees*, Report of the Third Circuit Task Force, 108 F.R.D. 237 (1985)..................................................................................................20

Plaintiffs Mary Lou Bennek ("Bennek") and Cora Frohman ("Frohman") (collectively "Plaintiffs") respectfully submit this Unopposed Motion for Final Approval of the Derivative Settlement and Award of Attorney's Fees and Reimbursement of Expenses (the "Motion").[1]

## I.    INTRODUCTION

This is a shareholder derivative action on behalf of nominal defendant The Home Depot, Inc. ("Home Depot" or "the Company") arising out of the breach of Home Depot's payment data systems announced by the Company in 2014. As explained herein, and in the Declaration of Stuart J. Guber in Support of Plaintiffs' Unopposed Motion for Final Approval of Derivative Settlement and Award of Attorneys' Fees and Reimbursement of Expenses (the "Guber Decl."), filed herewith, the Settlement is the culmination of almost three years of investigation, litigation and arm's-length negotiations among well-informed, experienced counsel for the parties, and represents an excellent result for the Company.

The Settlement provides a comprehensive set of corporate governance reforms and structural improvements designed to strengthen Home Depot's

---

[1]    This brief incorporates by reference the entirety of the Stipulation of Settlement and Release Agreement dated as of April 21, 2017 (the "Stipulation" or "Stip."), which was filed with the Court in connection with Plaintiffs' Unopposed Motion for Preliminary Approval of Derivative Settlement (the "Preliminary Approval Motion"). Unless otherwise herein defined, all capitalized terms used herein shall have the same meanings as set forth in the Stipulation.

oversight of data security in the wake of a significant data breach. The corporate governance reforms were developed with the assistance of two top data security experts retained by Shareholder Counsel, and Home Depot and Current Home Depot Stockholders will benefit from these improved operations and from the increased Board oversight of data security secured by the Settlement.

These substantial benefits, when weighed against the risks, uncertainties, and challenges Plaintiffs would face through continued prosecution of the claims, fully justify this Court's final approval of the Settlement as fair, reasonable, and adequate under applicable law. In light of the significant benefits obtained as a result of Shareholders Counsel's and Shareholders' initiation, prosecution, and successful resolution of the claims, the agreed-to Fee and Expense Award of $1,125,000 and Service Award of $1,500 to each of the Shareholders (payable from the Fee and Expense Award), are supported by law and should be approved. Notice of the Settlement has been timely provided to Home Depot shareholders, and to date no objections have been received.[2]

---

[2]     The deadline for objections is September 11, 2017.

## II.    SUMMARY OF FACTUAL AND PROCEDURAL BACKGROUND[3]

### A.    Background to the Litigation

In September 2014, Home Depot announced its payment data systems had been breached by third-party criminals, exposing the payment data of Home Depot customers who had used their debit and credit cards to make in-store purchases. On September 30, 2014 and April 20, 2015, Plaintiffs Frohman and Bennek, respectively, issued written demands to Home Depot for inspection of certain corporate books and records related to the September 2014 breach. Plaintiffs sought to investigate whether any officers or directors of Home Depot breached their fiduciary duties by ignoring the risks of, and/or failing to prevent, the Data Breach. After receiving relevant documents and information, in August and October 2015, Plaintiffs filed separate actions, alleging certain of Home Depot's officers and directors breached their fiduciary duties.

### B.    The Consolidated Action

By order dated January 20, 2016, the two actions were consolidated. On February 29, 2016, Plaintiffs filed a Verified Consolidated Shareholder Derivative Complaint (the "Complaint"). Plaintiffs alleged the Individual Defendants knew

---

[3]    A more detailed description of the litigation and related proceedings is set forth in the Guber Decl., filed herewith.

Home Depot was not in compliance with data security standards, and failed to ensure Home Depot implemented the necessary data security procedures to prevent a data breach. Plaintiffs alleged claims against the Individual Defendants for breach of fiduciary duty, waste of corporate assets, and violation of § 14(a) of the Securities Exchange Act of 1934 in connection with the Company's 2014 and 2015 proxy statements.

On April 14, 2016, the Individual Defendants and the Company (the "Defendants") filed a Motion to Dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 23.1(b)(3) (the "Motion to Dismiss"), which Plaintiffs opposed. On November 30, 2016, after oral argument, the Court granted the Motion to Dismiss, without leave to amend. The Court held that Plaintiffs failed to adequately plead the futility of a shareholder demand. On December 28, 2016, Plaintiffs filed a Notice of Appeal to the United States Court of Appeals for the Eleventh Circuit.

### C.     The Litigation Demand

On September 22, 2014, Home Depot shareholder Berel Rosenfeld ("Rosenfeld") made a written demand on the Board to investigate the data breach and "institute claims on behalf of the Company against any person responsible for causing damage to the Company" (the "Litigation Demand"). Upon receiving the

Litigation Demand, the Board appointed a Demand Review Committee (the "DRC") of three non-executive directors, which retained independent outside counsel to assist in the DRC's review of the Litigation Demand.

On September 14, 2015, DRC counsel sent a letter to Rosenfeld's counsel, informing him the DRC made its recommendation to the Board that it was not in the Company's or stockholders' best interests to pursue the claims raised in the Litigation Demand, which the Board adopted. On November 23, 2015, DRC counsel and Company counsel met with Rosenfeld's counsel to discuss the Litigation Demand and the Board's response. On January 11, 2017, Rosenfeld issued a Section 220 demand on Home Depot seeking internal books and records regarding the Board's investigation and refusal of the Litigation Demand.

### D.    Settlement

In August 2016, Shareholder Counsel and their respective cybersecurity experts met with the Company's Chief Information Security Officer ("CISO"), Senior Director of Information Security, and Director of Information Security to discuss the state of Home Depot's data security practices and procedures. Beginning in September 2016, all parties participated in two mediation sessions with mediator Ralph Levy, Esq. of JAMS, which were unsuccessful. While Plaintiffs' appeal and Rosenfeld's Section 220 demand were pending, settlement

discussions continued, and a settlement in principle was reached on February 27, 2017, which was documented and filed with the Court on April 28, 2017. Following limited remand from the 11th Circuit, this Court granted preliminary approval of the Settlement on July 14, 2017, and notice to Current Home Depot Stockholders was timely provided. *See* Docket Nos. 80-81, *Notices of Filing Declaration Regarding Publication of Notice to Shareholders*. To date, no objections have been received.

## III. TERMS AND BENEFITS OF THE SETTLEMENT

Shareholders believe the Settlement provides meaningful Corporate Governance Reforms (the "Reforms") that provide important remedial measures and enhancements that improve the Company's corporate practices and are directly responsive to the allegations in the Complaint and the Litigation Demand.

The Reforms require the Company to: (1) document the duties and responsibilities of the CISO to provide clarity regarding the CISO's important function; (2) periodically conduct Table Top Cyber Exercises to validate and test the Company's data security procedures, create remediation plans, train personnel, and raise organizational awareness; (3) monitor and periodically assess key indicators of compromise on computer network endpoints; (4) maintain and periodically assess the Company's partnership with a dark web mining service to

search for potentially stolen Home Depot information; (5) maintain an executive-level committee focused on the Company's data security, and document its duties and responsibilities; (6) maintain an Incident Response Team and an Incident Response Plan; and (7) maintain membership in at least one Information Sharing and Analysis Centers (ISACs) or Information Sharing and Analysis Organizations (ISAOs). *See* Guber Decl., 46. The Board must also proactively monitor the Company's overall cybersecurity budget, and is authorized to retain its own IT, data and security experts, all of which increase accountability and oversight of the Company's data collection and storage systems. *Id*.

## IV. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE FINALLY APPROVED BY THE COURT

Federal Rule of Civil Procedure 23.1 requires court approval of the settlement of a shareholder derivative action. *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984). Compromises of disputed claims are favored. *Williams v. First Nat'l Bank,* 216 U.S. 582, 595 (1910). Courts should be guided by the "strong judicial policy favoring settlement, as well as by the realization that compromise is the essence of settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). Settlements conserve "judicial resources by avoiding the expense of a complicated and protracted litigation process." *In re Motorsports Merch. Antitrust Litig.*, 112 F. Supp. 2d 1329, 1333 (N.D. Ga. 2000). "Settlements

of shareholder derivative actions are particularly favored because such litigation is 'notoriously difficult and unpredictable.'" *Maher v. Zapata Corp.*, 714 F. 2d 436, 455 (5th Cir. 1983) (citation omitted); *see also Zimmerman v. Bell*, 800 F.2d 386, 392 (4th Cir. 1986) (settlement of derivative action is favored because it allows "management [to] return its attention and energy from the courtroom to the corporation itself.").

The Court's role in deciding whether to approve a settlement is focused upon consideration of the fairness, reasonableness, and adequacy of the settlement, not upon determining the result which might have been obtained after trial. *See Bennett,* 737 F.2d at 986; *In re Chicken Antitrust Litig.*, 560 F. Supp. 957, 960 (N.D. Ga. 1980) (court's role is to evaluate settlement "without reaching ultimate conclusions on the issues underlying the dispute or substituting its business judgment for that of the parties.")

The standard for determining whether final approval is warranted is whether the proposed settlement is fair, adequate and reasonable and not the product of collusion.[4] *Bennett*, 737 F.2d at 986; *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977). In evaluating a settlement, courts should consider the following factors:

---

[4]     The role of the court and the criteria to be considered in evaluating the adequacy and fairness of a derivative settlement are substantially the same as in a

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; and (4) the complexity, expense, and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986.[5] Settlements are presumptively fair when they are negotiated at "arms' length" by experienced counsel. *See Lucas v. Kmart Corp.,* 234 F.R.D. 688, 693 (D. Colo. 2006). The relevant factors are addressed below and each supports final approval of the Settlement.

### A. The Likelihood of Success at Trial

Shareholder derivative litigation "is notably difficult and notoriously uncertain," *Lewis v. Newman,* 59 F.R.D. 525, 528 (S.D.N.Y. 1973) and settlement is therefore particularly appropriate. *Nelson v. Bennett,* 662 F. Supp. 1324, 1334 (E.D. Cal. 1987). Here, Plaintiffs faced formidable obstacles to recovery. The Court granted Defendants' Motion to Dismiss, without leave to amend. While Plaintiffs appealed that decision and believe their appeal has merit, success is far from certain, and failure to achieve reversal of this Court's order would end this

---

class action. 7 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* §22.110, at 476 (4th ed. 2002).

[5] The *Bennett* factors are very similar to the factors used by Delaware courts when determining the fairness and adequacy of a proposed derivative settlement. *See Polk v. Good*, 507 A.2d 531, 536 (Del. 1986).

litigation without any recovery. *See, e.g., Maher*, 714 F.2d at 461 (affirming approval of derivative settlement where further recovery "was problematical" and "did not outweigh the costs, both legal and otherwise").

Even if the appeal succeeded, many challenges to recovery remained. *See In re Pac. Enters. Sec. Lit.,* 47 F.3d 373, 378 (9th Cir. 1995) ("the odds of winning [a] derivative lawsuit [are] extremely small"). The Individual Defendants continue to deny any wrongdoing and Plaintiffs likely will face dispositive motions to dismiss for failure to state a claim and summary judgment if the case were remanded. Witnesses could become unavailable or be unable to recall critical information, and at trial the trier of fact could react to the evidence in unfavorable ways. Thus, "it is prudent to eliminate the risks of litigation to achieve specific certainty though admittedly it might be considerably less (or more) than were the case fought to the bitter end." *Fla. Trailer & Equip. Co. v. Deal*, 284 F.2d 567, 573 (5th Cir. 1960).

Also, even though Home Depot suffered losses as a result of the conduct challenged in the Complaint, the question of whether Home Depot suffered legal, non-exculpated damages is much more complicated. Defendants who are directors likely would emphasize the application of Delaware's Section 102(b)(7) "raincoat" provision, which forecloses personal liability against them except in cases where scienter or a breach of the duty of loyalty is established. The inherently

unpredictable risks of proceeding with the claims lend support to the proposition that a positive resolution of the case was uncertain. That Shareholders and Shareholder Counsel were able to achieve the Settlement in the face of these obstacles is a testament to the Settlement's fairness and reasonableness, and strongly supports final approval of the Settlement.[6]

## B. The Range of Reasonableness

"The second and third factors in the Eleventh Circuit's *Bennett* analysis call for the Court to determine the 'possible range of recovery' and then ascertain where within that range 'fair, adequate, and reasonable settlements lie.'" *Garst v. Franklin Life Ins. Co.*, No. 97-C-0074, 1999 U.S. Dist. LEXIS 22666, at *64 (N.D. Ala. June 25, 1999). Determination of a "reasonable" settlement does not mean "establishing success or failure to a certainty." *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 212 (5th Cir. 1981). In derivative settlements, the range of recovery differs from that of a class action. As the Court in *Maher* explained:

---

[6] Shareholders would have faced the same obstacles in any *new* action filed claiming a demand was *wrongfully refused*, and would have faced the threshold obstacle of alleging with particularity that the Board's refusal of a demand was not protected by the business judgment rule, a very difficult showing to make. *Grimes v. Donald*, 673 A. 2d 1207 (Del. 1996).

where, as here, the derivative suit is largely an attack on past corporate management practices, as well as on . . . present officers and directors, ***the dollar amount of a possible judgment, which is essentially the sole goal in the class action damage suit, is not the sole, and may well not be the most important, matter to be considered, for the effects of the suit on the functioning of the corporation may have a substantially greater economic impact on it, both long- and short-term,*** than the dollar amount of any likely judgment in its favor in the particular action. . . . The evaluation of such an economic impact is necessarily judgmental and imprecise and normally does not lend itself to meaningful quantification."

714 F.2d at 461 [emphasis supplied]; *see also Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1311 (3d Cir. 1993) ("Despite the difficulties they pose to measurement, nonpecuinary benefits to the corporation may support a settlement."); *Cohn v. Nelson*, 375 F. Supp. 2d 844, 853 (E.D. Mo. 2005) ("Courts have recognized that corporate governance reforms such as those achieved here provide valuable benefits to public companies."); *United Nat'l Ret. Fund v. Watts*, No. 04-3603, 2005 U.S. Dist. LEXIS 26246, at *18 (D.N.J. Oct. 28, 2005) (derivative settlement approved as "fair, adequate, reasonable and proper, and in the best interests" of shareholders where corporate reforms would "protect [the company] from the reoccurrence of certain alleged wrongdoings.")

The establishment of corporate governance procedures provides significant benefits to the nominal defendant and justifies settlement. *See Citron v. Burns*,

C.A. No. 7647, 1985 Del. Ch. LEXIS 382, *6 (Del. Ch. Feb. 4, 1985).[7] Here, the Reforms are designed to bolster data security practices, improve Board and management oversight, and minimize the probability of future data breaches and associated damages.[8] Under applicable law, the Settlement falls well within the range of reasonableness for the settlement of complex derivative litigation, particularly when compared to the risks of continued litigation.

### C. Complexity, Expense, Risk and Duration of Further Litigation Support Approval of the Settlement

The Court should also consider the complexity, expense, and likely duration of continued litigation in determining whether a settlement is fair, adequate, and reasonable. *Bennett*, 737 F.2d at 986; *Polk*, 507 A.2d at 536 (courts should consider the "delay, expense, and trouble of litigation"); *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424

---

[7]     Federal courts interpreting state law are in accord. *See Bell Atl. Corp.*, 2 F.3d at 1311 (collecting cases from the Second, Fourth, Fifth, and Sixth Circuits finding that remedial measures are an adequate basis for settlement of, and judicial approval of, derivative settlements).

[8]     *See In re Infinity Broad. Corp. S'holders Litig.*, 802 A.2d 285 (Del. 2002) (settlement's future impact properly considered in evaluating its fairness and adequacy); *see also Cohn*, 375 F. Supp. 2d at 854-55 (applying Delaware law in approving settlement and finding that "[a]s a result of the implementation of the settlement's corporate governance changes, [the corporation] is far less likely to become subject to long and costly securities litigation in the future, as well as prosecution or investigation by regulators and prosecutors.").

(1968) (holding a court must consider, *inter alia,* "the complexity, expense, and likely duration of such litigation"); *Corrugated Container*, 659 F.2d at 1325 (noting immediate benefit of settlement and avoidance of costly, lengthy litigation).

Here, several factors are present making it likely that, absent this Settlement, this case would require additional expenditures and lengthy litigation, with the significant risk that Home Depot could obtain results less beneficial than the ones provided by the Settlement - or no recovery at all. Defendants already have obtained dismissal of the Complaint. Absent this Settlement, the parties would expend substantial time and resources briefing the appeal.

Even if Plaintiffs succeed in their appeal, complicated discovery would be required. Defendants undoubtedly would file additional dispositive motions Plaintiffs' would have to withstand, and a trial alleging breaches of fiduciary duty in connection with the data breach would rely heavily on experts to opine on matters such as fiduciary duty, cybersecurity and damages. Any judgment for Plaintiffs at trial would be subject to the continuing risks of litigation through further appeals. Even very large judgments, recovered after lengthy litigation and trial, can be greatly reduced or lost post-trial or on appeal. *See, e.g., Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1340 (11th Cir. 1999) (affirming reduction

of $45 million damages award to $4.35 million); *Gregg v. U.S. Indus., Inc.*, 887 F.2d 1462, 1477 (11th Cir. 1989) (affirming reduction of $18.5 million damages award to $2 million). The complexity, expense, risk and duration of continued litigation therefore provide further support for the immediate benefits provided by the Settlement.[9]

### D. The Reaction of Current Home Depot Shareholders Also Supports Approval of the Settlement

The reaction of shareholders to a proposed settlement is a significant factor to be considered. The absence of substantial objections is "excellent evidence of the settlement's fairness and adequacy." *Ressler v. Jaconson*, 822 F. Supp. 1551, 1556 (M.D. Fla. 1992); *see also Motorsports Merch.*, 112 F. Supp. 2d at 1338 ("[T]he lack of objections is a further factor weighing in favor of approval of the settlement[]."); *In re Cendant Corp. Derivative Action Litig.*, 232 F. Supp. 2d 327, 333-34 (D.N.J. 2002) (where no objections were made, "there is little doubt that this factor weighs in favor of approval").

Here, the Court approved the form and manner of notice of this Settlement. *See* Docket No. 78. Notice was timely provided to shareholders in accordance with the Court's Order. *See* Docket Nos. 80-81. The Notice informed shareholders of

---

[9]     Again, the same obstacles would be presented in any newly filed "demand refused" case.

their rights under the Settlement, including their right to object. The deadline for submitting objections is September 11, 2017. To date, no objection to the Settlement has been received.

### E. The Stage of the Proceedings Supports Approval of the Settlement

In evaluating whether to approve a settlement, the Court should consider the "stage of proceedings at which the settlement was achieved." *Bennett,* 737 F.2d at 986. Shareholder Counsel is now well-positioned to assess the merits of the case after having thoroughly investigated and pursued the claims since September 2014. Shareholders believe settling the case now is warranted.

In weighing this factor, the Court should focus on whether "[c]ounsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation," not the extent to which formal discovery has advanced. *Francisco v. Numismatic Guar. Corp.*, No. 06-61677, 2008 WL 649124, at *11 (S.D. Fla., Jan. 31, 2008). Indeed, "formal discovery [is not] a necessary ticket to the bargaining table." *Corrugated Container*, 643 F.2d at 211; *see also Cotton*, 559 F.2d at 1332 (the fact that "very little formal discovery was conducted and there is no voluminous record in this case . . . does not compel the conclusion that insufficient discovery was conducted.").

Before commencing litigation, Plaintiffs' Counsel conducted an extensive investigation using Section 220 to obtain hundreds of pages of documents relevant to the Individual Defendants' alleged misconduct and corresponding damages to the Company. Plaintiffs reviewed Home Depot's internal corporate books and records, which included highly sensitive and confidential information about the Board's oversight of the Company's data security practices. Plaintiffs filed a detailed Complaint that incorporated the information obtained through the Section 220 Demands. The parties engaged in motion practice that culminated in the Court granting Defendants' Motion to Dismiss, which Plaintiffs appealed.

In addition, prior to engaging in the first of two mediation sessions that culminated in the Settlement, Shareholder Counsel and their experts met with Home Depot data security personnel, including the Company's CISO, in August 2016 to better understand the Data Breach and determine what steps Home Depot had taken and could take to protect against a reoccurrence. With the benefit of this information, Shareholder Counsel then engaged in mediation with the assistance of their two experts in cybersecurity. Also, after agreeing to the terms of the Settlement, Shareholder Counsel received and reviewed additional documentation about the Board's response to the Litigation Demand to confirm the fairness of the Settlement.

Shareholders' investigation and vigorous pursuit of the claims positioned their counsel to understand the strengths and weaknesses of the claims and to negotiate and obtain a Settlement that provides meaningful relief to the Company. Settlement at this juncture will foreclose the expense and expenditure of resources associated with continued litigation, as well as the burden imposed on the Court by complex and protracted litigation. Accordingly, this factor supports final approval of the Settlement. *See Cotton*, 559 F.2d at 1332 (informal discovery and investigation "achieved the desired quantum of information necessary to achieve a settlement").

### F. The Settlement is the Result of Good Faith, Arm's-Length Negotiations Between Experienced and Capable Counsel

A settlement is presumptively fair, where, as here, the parties, through capable counsel, have engaged in arm's-length negotiations. *Newberg*, §1128 at 11-59 (1992); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995). The judgment of experienced counsel is particularly informative to the trial court's review of a proposed settlement. *Cotton*, 559 F.2d at 1330; *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 313 (N.D. Ga. 1993). If experienced counsel determines a settlement is in the best interests of the parties, "the attorney's views must be accorded great weight." Courts "presume the

absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered." *Newberg*, § 11:51, (4th Ed. 2010).

Here, counsel for all Parties are highly experienced in complex litigation and shareholder derivative actions and are well-informed about the strengths and weaknesses of the claims. Shareholders entered into the Stipulation only after thoroughly investigating the claims, carefully weighing all available options, and participating in extensive settlement negotiations with an experienced mediator, and with the benefit of cybersecurity experts. Shareholder Counsel believe the Reforms achieved by the proposed Settlement confer substantial benefits upon Home Depot and its shareholders. Accordingly, the Settlement should be approved.

## V. THE AGREED-TO FEE AWARD IS FAIR AND REASONABLE AND SHOULD BE FINALLY APPROVED

Shareholder Counsel also seeks final approval of the Fee and Expense Award of $1,125.000. It is well-recognized that counsel who obtain substantial benefits for a corporation are entitled to attorneys' fees and costs. *Boeing Co v. Van Gemert*, 444 U.S. 472 (1980). The Fee and Expense Award was negotiated at arm's-length only after the Settlement terms had been agreed upon. The Fee and Expense Award is fair and reasonable in light of the significant benefits achieved for Home Depot and Current Home Depot Stockholders, the effort expended in securing those benefits, and the entirety of the relevant circumstances.

### A.	The Court Should Approve the Negotiated Fee

The Fee and Expense Award was negotiated at arm's-length and is a strong indication that it is fair and reasonable. *See Hensley v. Eckerhart*, 461 U.S. 424 (1983) (holding that an agreed-to fee is ideal because "[a] request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee."). Where, as here, there is no evidence of collusion and no detriment to the parties, the Court should give "substantial weight to a negotiated fee amount." *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 695 (N.D. Ga. 2001); *Court Awarded Attorney's Fees*, Report of the Third Circuit Task Force, 108 F.R.D. 237 (1985). The Parties' valuation of the services performed by Shareholder Counsel, reached in direct negotiations, strongly supports the Fee and Expense Award.

### B.	The Fee and Expense Award is Supported by the *Johnson* Factors.

In determining whether a requested award of attorneys' fees is fair and reasonable, district courts are guided by the factors articulated in *Johnson v. Georgia Highway Exp. Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974) *abrogated on other grounds Blanchard v. Bergeron*, 109 S. Ct. 939 (1989). The *Johnson* factors include: the time and labor required; the novelty and difficulty of the questions involved; the skill required to perform the legal service; the preclusion of other

employment due to the acceptance of the case; the customary fee; whether the fee is fixed or contingent; the time limitations imposed; the amount involved and the results obtained; the experience, reputation, and ability of the attorneys; the "undesirability" of the case; the nature and length of the professional relationship with the client; and awards in similar cases. [10] The *Johnson* factors are not rigid and formulaic but should be applied in light of the circumstances of the particular case. *See In re Catfish Antitrust Litig.*, 939 F. Supp. 493, 502 (N.D. Miss. 1996) ("[N]ot every [*Johnson*] factor need be necessarily considered."). Application of these factors supports the fairness and reasonableness of the requested fee.

### 1. The Time and Labor Required and the Novelty and Difficulty of the Questions Involved

Shareholder derivative actions are "notoriously difficult and unpredictable." *Maher*, 714 F.2d at 455. This case is no exception. The legal and factual issues presented were difficult and complex and the allegations concerning cybersecurity were nuanced and required substantial, detailed knowledge of technical issues and corporate law.

Shareholder Counsel undertook significant effort and expended substantial resources throughout the course of the litigation including, *inter alia*, undertaking a

---

[10] The *Johnson* factors are similar to those employed by Delaware courts. *See Infinity Broad. Corp.*, 802 A.2d at 293.

thorough investigation of the facts alleged through the use of Section 220, retaining two cybersecurity experts, filing initial complaints and the Complaint, making the Litigation Demand and interfacing with the Board, meeting with the Company's information security executives, and participating in settlement negotiations.

Shareholder Counsel collectively has expended 3,458 hours in the prosecution and settlement of this action and incurred $2,366,888.21 in attorneys' fees and $91,186.27 in unreimbursed expenses. *See* Guber Decl., ¶¶ 64, 66. The agreed-upon Fee and Expense Award is modest in light of these numbers, as it is *less* than the total fees and expenses incurred in prosecution of this action, and is therefore fair and reasonable.

### 2.    The Amount Involved and the Results Obtained

The substantial benefit conferred upon Home Depot and its shareholders is perhaps the most important factor for the Court to consider. As the Supreme Court explained, "[a]n increasing number of lower courts have acknowledged that a corporation may receive a 'substantial benefit' from a derivative suit, justifying an award of counsel fees, regardless of whether the benefit is pecuniary in nature." *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 395, 396-97 (1970); *Maher*, 714 F.2d at 436, 457-58 n.38 (awarding attorneys' fees where the "lawsuit was at least a contributing factor in several major beneficial changes in Zapata Corporation");

s*ee also In re AOL Time Warner Shareholder Derivative Litig.*, 2010 WL 363113, at *15 (S.D.N.Y. Feb. 1, 2010) ("Though the value of these reforms cannot be reduced scientifically to dollars and cents, counsel are entitled to sizeable compensation for this corporate mea culpa and measures that enhance[] the company's goodwill, standing and profitability into the future."); *In re NVIDIA Corp. Derivative Litig.*, C 06-06110-SBA (JCS), 2008 WL 5382544, at *3 (N.D. Cal. Dec. 22, 2008) ("As corporate debacles such as Enron, Tyco and WorldCom demonstrate, strong corporate governance is fundamental to the economic well-being and success of a corporation.").

The Reforms achieved through the Settlement confer a substantial benefit on Home Depot and its shareholders, and in the Stipulation Defendants acknowledge that resolution of the claims on the terms presented is desirable for Home Depot. Shareholder Counsel's efforts obtained a substantial benefit for the Company, and as such, the request for approval of attorneys' fees and expenses should be approved.

### 3. The Skill, Experience, and Reputation of Counsel

The experience, reputation, and ability of counsel is another factor the Court should consider in determining whether a fee award is fair and reasonable. *Johnson*, 488 F.2d at 717-719. Counsel has attached their firm resumes as Exhibits

A to their respective declarations, attached to the Guber Declaration. These resumes reflect their exemplary records of achievement in shareholder litigation.

### 4. The Contingent Nature of the Fee

The risk of receiving no recovery is a major factor in awarding attorneys' fees. *See, e.g., In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d. 1323, 1335 (S.D. Fla. 2001); *Milstein v. Werner*, 58 F.R.D. 544, 549 (S.D.N.Y. 1973) ("Derivative suits . . . require the initiative of shareholders to commence the suit, and the probable level of compensation for attorneys as a practical matter directly effects the ability of shareholders to exercise such initiative. Thus, fee allowances in this area should be viewed as an incentive, as much as a just reward for services performed.")

Shareholder Counsel undertook derivative claims with difficult and novel legal and factual issues against well-financed Defendants with no guarantee of successful resolution or compensation for their efforts. Shareholder Counsel expended significant time and resources and negotiated a favorable settlement. Given the risks involved, the fully contingent nature of this action further supports the agreed upon fees and expenses.

### 5. Awards in Similar Cases

As demonstrated above, counsel in derivative litigation who achieve corporate governance settlements are entitled to a fee award. As set forth in the

Guber Decl. and exhibits attached thereto, derivative settlements based on the adoption of corporate governance reforms often justify fees substantially in excess of the $1,125,000 sought here. *See* Guber Decl., 61 (collecting cases awarding fees between $2 million and $14.5 million where counsel secured corporate governance reforms). This further supports the reasonableness of the Fee Award.

## VI. THE SERVICE AWARD SHOULD BE APPROVED

Finally, the Stipulation provides that Shareholder Counsel will apply for a Service Award in the amount of $1,500 to be paid from the Fee and Expense Award. Such awards are customary to reward plaintiffs for doing a "public service" by stepping forward and enforcing valuable shareholder claims. *Cendant Corp.*, 232 F. Supp. 2d at 327 (approving award of $25,000 to the lead plaintiff). The Shareholders worked with Shareholder Counsel to achieve an excellent result for the Company. The Service Award should be approved.

## VII. CONCLUSION

For the reasons set forth above, Shareholders respectfully submit that the Settlement, including the agreed upon Fee and Expense Award and the Service Award, is fair, reasonable, and adequate and should be approved by the Court.

Dated: September 7, 2017

**HOLZER & HOLZER, LLC**

*/s/ Corey D. Holzer*
Corey D. Holzer
Ga. Bar No. 364698
Marshall P. Dees
Ga. Bar No. 105776
1200 Ashwood Parkway, Suite 410
Atlanta, GA 30338
Tel: (770) 392-0090
Fax: (770) 392-0029

***Liaison Counsel for Plaintiffs***

**FARUQI & FARUQI, LLP**
Stuart J. Guber
Ga. Bar No. 141879
Timothy J. Peter
101 Greenwood Avenue, Suite 600
Jenkintown, PA 19046
Telephone: (215) 277-5770
Facsimile: (215)277-5771

**FARUQI & FARUQI, LLP**
Nina M. Varindani
369 Lexington Avenue, 10th Floor
New York, New York 10017
Telephone: (212) 983-9330
Facsimile: (212) 983-9331

**SCHUBERT JONCKHEER
& KOLBE LLP**
Robert C. Schubert
Willem F. Jonckheer
Miranda P. Kolbe
3 Embarcadero Center, Suite 1650
San Francisco, CA 94111
Telephone: (415) 788-4220

Facsimile: (415) 788-0161

**Lead Counsel for Plaintiffs**

Kenneth B. Hodges III
Georgia Bar No. 359155
2719 Buford Highway NE
Atlanta, Georgia 30324
Telephone: (404) 692-0488
Facsimile: (404) 759-6783

**Counsel for Plaintiff Bennek**